## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2020

Lyle W. Cayce
Clerk

No. 19-10214

JOHNNIE MELVIN,

      Plaintiff - Appellant

v.

BARR ROOFING COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:18-CV-50

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Johnnie Melvin appeals the district court's grant of summary judgment in Barr Roofing Company's favor on his claims of discrimination, retaliation, and hostile work environment under Title VII and 42 U.S.C. § 1981. For the following reasons, we AFFIRM the district court's grant of summary judgment on Melvin's discrimination claim but REVERSE it on the retaliation and hostile work environment claims.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10214

## I.  Background

Because this is an appeal of a summary judgment, we are providing the facts in the light most favorable to the non-movant, recognizing, of course, that some are disputed.  *See McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  Melvin, an African-American man, was a sheet-metal worker for Barr Roofing on and off from 2001 until 2017.  Melvin alleged that, beginning in 2012 or 2013, he became the target of racial slurs at work and that several white coworkers, including his direct supervisor and his supervisor's relatives, called him racial slurs "on a daily or near-daily basis."  In March 2013, he complained to Bryan Galloway, vice president of Barr Roofing, about the racial slurs; Melvin was subsequently fired, then rehired.

According to Melvin, in 2016, E.H., a fellow employee related to his supervisor, offered Melvin marijuana while on the job, and he accepted it. After another employee reported that Melvin and others were smoking marijuana on the job, Melvin was asked to take and subsequently failed a drug test.  Melvin alleged that E.H. passed the drug test by swapping his urine sample with another person's "clean" sample.  Melvin was not fired because of the failed drug test, and he understood that the failed drug test meant he would later be retested.

In April 2017, a white employee took Melvin's work tools and threw them out of a window while they were riding together in a car after completing work. The white employee indicated he was a white supremacist and threatened to throw Melvin off a roof when they worked together again.  On May 1, Melvin notified Galloway about the incident.  Galloway told Melvin that he would investigate the complaint (though Melvin believes that Galloway might not have followed through on the investigation).  Arek Hawkins, Melvin's supervisor, approached Melvin the following day and said that he did not like "snitches."

2

No. 19-10214

On May 4, Galloway informed Melvin that Hawkins had written him up for poor performance and "cussing," and accordingly told Melvin to go home for the day rather than continue working. According to Melvin, other employees were not disciplined for similar work performance or cussing, and Melvin "felt that [he] was being punished for reporting [his] complaints." Galloway called Melvin later that afternoon and asked Melvin why he had not shown up for a drug test. Melvin was "confused" because he was "unaware that [Galloway] wanted [him] to take a drug test"; Galloway told Melvin to take a drug test that day. Melvin told Galloway that he could not do so because he lacked access to a vehicle, and Melvin did not take the drug test.

When Melvin returned to work, Hawkins—who supervised Melvin's work "in the field"—reiterated that he did not like snitches and said that Melvin would no longer perform work for Hawkins. On May 9, Galloway fired Melvin for failure to submit to a drug test.

On April 10, 2018, Melvin filed his complaint, alleging violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Melvin stated that he faced "a pattern and practice of harassment and humiliation" at work and that the motive for his termination "was racial discrimination and retaliation."

Barr Roofing moved for summary judgment on Melvin's discrimination and retaliation claims. In his response brief, Melvin argued that Barr Roofing had not properly addressed the issue of harassment. Barr Roofing replied that Melvin had raised the legal issue of a hostile work environment claim for the first time in his response brief, as his complaint referred only to discrimination and retaliation. Melvin moved to amend his complaint, but the district court denied the motion. The district court held that Melvin failed both to sufficiently plead a hostile work environment claim and to allege a prima facie case on such a claim. It further held that summary judgment should be granted for Barr Roofing on Melvin's discrimination and retaliation claims

3

because Melvin failed to show that Barr Roofing's proffered reason for his termination was pretextual.  Melvin timely appealed.

## II.   Discussion

We review a grant of summary judgment de novo. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 (5th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  We address each issue in turn.[1]

### A.   Discrimination

When using circumstantial evidence, a plaintiff's claims of unlawful discrimination are analyzed using the *McDonnell Douglas*[2] burden-shifting framework.  *See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016).  Under this framework, courts employ a three-step approach.  Initially, a Title VII plaintiff must "set forth a prima facie case of race-based discrimination."  *Id.*  If the plaintiff successfully does so, then "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Id.* (internal quotation marks omitted).  The burden then shifts back to the employee to "offer some

---

[1]   In addition to his Title VII claims, Melvin brought claims under 42 U.S.C. § 1981. The district court held that Melvin's § 1981 claims were preempted by his Title VII claims. That holding was error, as plaintiffs may properly bring claims of racial discrimination against private employers under both § 1981 and Title VII.  *See Robertson v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 273 F.3d 1108, 2001 WL 1131950, at *1 (5th Cir. 2001) (per curiam) (noting that Title VII is not "the exclusive remedy for race based employment discrimination").  Because the two sets of claims rise and fall on the same facts, we do not address the § 1981 claims separately.  *See Parker v. Miss. St. Dep't of Pub. Welfare*, 811 F.2d 925, 927 n.3 (5th Cir. 1987).

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

evidence that the reason proffered was a pretext for discrimination." *Id.* At the pretext stage, a "heightened but-for causation requirement applies." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

To establish a prima facie case for race-based discrimination, Melvin must show that he (1) "is a member of a protected class," (2) "was qualified for the position," (3) "was subject to an adverse employment action," and (4) "was replaced by someone outside [his] protected class or was treated less favorably than other similarly situated employees outside [his] class." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

Melvin fails to identify a similarly situated comparator who received better treatment. Melvin alleges that when he took and failed a drug test in 2016, his white coworker E.H. passed the drug test only because he swapped out his affected urine sample with a "clean" one. However, Melvin was not terminated for the failed drug test in 2016; he was terminated for failing to take a later drug test. Melvin did not allege that other employees similarly failed to take a drug test yet retained their job. Accordingly, Melvin has not shown that a similarly situated person existed.

Melvin also contends that at some point, his white coworker E.H. received a raise, but Melvin had been told that there were "no raises for anyone." Melvin does not dispute Barr Roofing's contention that E.H. was paid more because he had an additional professional skill: he was able to drive for the company. Melvin argues that instead of erroneously saying that no employees would receive a raise, the company should have explained to him that E.H. received additional compensation because of his additional skill. Niceties of employment etiquette are not actionable. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace." (internal quotation marks and citation omitted)). If an employee with a different skillset was paid

more than Melvin, then the employee is not a similarly situated comparator.

Because Melvin has not identified a similarly situated comparator, he cannot make out a prima facie case for discrimination. We affirm the grant of summary judgment on this claim.

## B.     Retaliation

Claims of unlawful retaliation under Title VII are also analyzed using the *McDonnell Douglas* burden-shifting framework. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). To establish a prima facie case of retaliation, a plaintiff must show "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

Here, Melvin alleged that he reported race-based harassment to his supervisor after a coworker self-identified as a white supremacist and threatened him. Reporting racial discrimination is an activity protected by Title VII. *See* 42 U.S.C. § 2000e-3(a); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). He was terminated, which is an adverse employment action. Melvin can also show a causal link: plaintiffs can rely on temporal proximity to support a causal nexus when the protected activity and adverse action occur "very close" in time.[3] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). Melvin alleged that he was terminated just five days after reporting harassment, which is very close. *See Haire*, 719 F.3d at 368 (determining that a time difference of roughly three months, coupled with

---

[3] The district court stated that Melvin would be unable to establish a prima facie case for retaliation because temporal proximity alone is insufficient to prove but-for causation. However, but-for causation is not required at the prima facie stage; "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015).

diminished responsibilities during that time, was "[close] enough to satisfy the third prong"). Accordingly, viewing the facts in the light most favorable to Melvin, he can establish a prima facie case for retaliation.

Having determined that Melvin can establish a prima facie case, the burden next shifts to Barr Roofing to produce a legitimate, non-discriminatory reason for Melvin's termination. Barr Roofing did so: it stated that Melvin was terminated for refusing to participate in a drug test, which violated its policy.

Last, the burden shifts back to Melvin to raise a fact issue as to pretext. At the pretext stage, a plaintiff may alternatively support but-for causation using the "cat's paw" theory. *See Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017). Under this theory, an employer may be held liable "even if the ultimate decisionmaker [him]self holds no discriminatory animus as long as the plaintiff can demonstrate that [the] decision was influenced by another who does hold such animus." *Id.* "Animus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct." *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). If a decisonmaker's judgment to terminate or discipline an employee is not supported by "a cause of independent origin that was not foreseeable," then the chain of events may suggest that the supervisor's decision was linked to the other person's retaliatory animus. *Id.* at 420.

Melvin contends that Hawkins reported him to Galloway for a retaliatory reason: Hawkins was unhappy that Melvin had reported his coworker for threatening to harm Melvin because of his race. Specifically, after a coworker who identified as a white supremacist threw Melvin's work tools out of a moving vehicle and threatened to harm him, Hawkins told Melvin he disliked snitches and reported to Galloway that Melvin had poor work performance and behavior. The next day, Melvin was told to take a drug test.

A couple days later, Hawkins informed Melvin that he would no longer work under Hawkins's supervision.  Then, Galloway fired Melvin.

Based on these facts, a reasonable jury might infer that Hawkins made negative reports about Melvin's work to Galloway in order to trigger some type of investigation or adverse action against Melvin.  The quick unfolding of events further supports this inference.  Although temporal proximity alone is insufficient to establish but-for causation,[4] the quick timing here, coupled with Hawkins's comments, if believed by a jury, would support a finding that Hawkins impermissibly influenced Galloway.  The cat's paw doctrine does not require that Galloway himself intended for the drug test to lead to Melvin's firing.  If Hawkins's complaints about Melvin's performance were intended to trigger an adverse action against Melvin, then Barr Roofing may be liable under the cat's paw doctrine.  *See Fisher*, 847 F.3d at 758.

Contrary to Barr Roofing's contention, this case is distinguishable from *Higgins v. Lufkin Industries*, in which we affirmed a grant of summary judgment based on an employee's refusal to submit to a drug test.  633 F. App'x 229 (5th Cir. 2015) (per curiam).  Higgins alleged that a coworker had made sexually suggestive and racially offensive comments toward her.  *Id.* at 230.  The co-worker became a supervisor, and after Higgins failed to follow his instructions, he sent her home for a day without docking her pay.  *Id.* at 230–31.  Higgins met with human resources about the issue and informed them about the previously made offensive comments.  *Id.* at 231.  A couple months later, a coworker reported that Higgins had brought marijuana to work; Higgins then refused to take a drug test and was fired for doing so.  *Id.*  We held that the "cat's paw theory of liability [was] inapplicable," as "Higgins offer[ed] no evidence that [the co-worker-turned-supervisor] influenced [the

---

[4] *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 420 (5th Cir. 2016) (per curiam).

ultimate decisionmaker] to fire her" and that the firing was "based on Higgins's refusal to submit to the requested drug test, . . . in violation of company policy." *Id.* at 233.

Here, however, Melvin's allegations suggest that Hawkins influenced Galloway's decision to fire Melvin, especially since Hawkins allegedly informed Melvin that he was unhappy with Melvin's "snitching" directly before complaining about his performance. Importantly, it is unclear whether Melvin truly "refused" to take a drug test or was simply unable to do so under the circumstances. Moreover, to require a "follow-up" drug test on the heels of an allegation of discrimination could create an inference that something suspect occurred.

In sum, resolving all inferences in Melvin's favor, we conclude that he sufficiently alleged a retaliation claim using the cat's paw doctrine.

## C.　Hostile Work Environment

We finally address whether the grant of summary judgment in Barr Roofing's favor on Melvin's hostile work environment claim was proper.

To prove a hostile work environment claim, a plaintiff must show that "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002).

Barr Roofing contends that Melvin failed to plead a hostile work environment claim. In his complaint, Melvin alleged that Barr Roofing's

> supervisors and employees engaged in discriminatory practices against [Melvin] on the basis of his race, including, but not limited to, engaging in a pattern and practice of harassment and humiliation of [Melvin

and] using racial slurs and epithets directed toward [Melvin] . . . .

Melvin's complaint did not contain the phrase "hostile work environment."

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must contain "a short and plain statement of the claim showing that [he] is entitled to relief." A plaintiff is not required to plead facts establishing a prima facie case, but his complaint must give the defendant "fair notice of the basis for [his] claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12, 514 (2002). The Supreme Court has cautioned that courts should not dismiss claims because of an "imperfect statement of the legal theory." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Melvin's complaint identifies the legal theory: he faced an environment of "harassment" because his coworkers and supervisors consistently used racial slurs. An allegation of harassment is the underlying basis for a hostile work environment claim. Accordingly, a defendant receiving an allegation of continuous and frequent harassment would be on notice of the plaintiff's legal theory. We conclude that Melvin sufficiently alleged a hostile work environment claim; failure to use the "magic words" is not dispositive. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000).

Barr Roofing also contends that Melvin failed to establish a prima facie case of a hostile work environment. We disagree. Melvin alleged facts to support a hostile work environment claim. First, as an African-American man, Melvin belongs to a protected group. *See* 42 U.S.C. § 2000e-2(a)(1). Second, he alleged that he was subject to harassment including racial slurs.

Third, racial slurs are based on race. The district court held that Melvin failed to allege harassment because "[p]oor treatment without more is not sufficient to show harassment based on race." *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 356 (5th Cir. 2017) (per curiam).

But the district court's reliance on *Eaton-Stephens* is misplaced. In that case, we held that a school counselor had not established a hostile work environment by (1) alleging that one of her coworkers had called her "the little black counselor" and (2) raising other general concerns about her treatment at work (for example, that a supervisor chastised her for performance-related issues in front of students' parents). *Id.* at 352–54. Notwithstanding the single race-related comment, the plaintiff's allegations of poor treatment did not show harassment based on race. *See id.* at 356. But Melvin did not simply complain of poor or unkind management. Nor did he allege that he experienced a single, offhand comment related to his race. Instead, Melvin alleged that he was consistently called derogatory racial slurs over the course of years. Consistent racial slurs are certainly based on race.

Fourth, for harassment to have "affected a term, condition, or privilege of employment," it must be "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration omitted). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000), *abrogated on other grounds by Burlington*, 548 U.S. at 53. In some cases, "a single incident of harassment" may be sufficiently severe to give rise to a claim; "a continuous pattern of much less severe incidents of harassment" may do so as well. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

11

Courts consider the circumstances as a whole, and "[n]o single factor is determinative." *Id.* at 399.

Here, Melvin alleged that he was continuously called the n-word at work over the course of years. We have held that African-American plaintiffs subject to racial slurs and derogatory comments over the course of three years sufficiently alleged severe or pervasive harassment. *Walker*, 214 F.3d at 626. Melvin also alleged that, after a coworker threw his tools out of a vehicle and Melvin said he would report the incident, the coworker invoked white supremacy and threatened to throw Melvin off a roof during work. This incident was a threat of physical violence, and invoking white supremacy was certainly threatening and humiliating. Barr Roofing's contention that the comments should not be actionable because Melvin was able to perform his work duties is unavailing, as "a showing that the employee's job performance suffered is simply a factor to be considered, not a prerequisite." *WC&M*, 496 F.3d at 399–400. We hold that, under the totality of the circumstances, Melvin has alleged that the harassment was sufficiently severe or pervasive.

Fifth, an employer is liable for harassment only if it knew or should have known about the harassment and failed to take remedial action. *Ramsey*, 286 F.3d at 268. In his affidavit,[5] Melvin stated that he complained multiple times about the harassment to Hawkins and Galloway, yet "to [his] knowledge, no actions were ever taken to stop the harassment or slurs." Melvin also stated that employees, including Hawkins, continued to make derogatory comments after Melvin complained. A jury could conclude that Barr Roofing failed to take remedial action if, after Melvin complained, his coworkers—including his

---

[5] Barr Roofing tries to discredit Melvin's affidavit, asserting that it is self-serving and conclusory. However, "a party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (per curiam).

supervisor—continued to use racial slurs in the face of Melvin's request to the contrary. Accordingly, a fact issue exists about whether Barr Roofing took action to remedy the harassment.

We determine that the district court erred in granting summary judgment against Melvin's hostile work environment claim, as Melvin sufficiently raised the issue in his complaint and alleged a prima facie case.

## III.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment that Melvin failed to establish a prima facie case for discrimination, REVERSE its grant of summary judgment on his retaliation claim, and REVERSE its grant of summary judgment on his hostile work environment claim. We also REVERSE the district court's holding that Melvin's § 1981 claims are preempted by his Title VII claims. We REMAND the case to the district court for further proceedings consistent with this opinion.