United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-21090

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff-Appellant

v.

WC&M ENTERPRISES, INC., doing business as Streater-Smith Honda

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

In this case involving allegations of a hostile work environment, the Equal Employment Opportunity Commission ("EEOC") appeals the district court's decision to enter summary judgment in favor of the defendant-appellee, WC&M Enterprises, Inc., d/b/a Streater-Smith Honda, Inc. We reverse.

I.

On May 11, 2001, Mohommed Rafiq ("Rafiq") was hired as a car salesman by WC&M Enterprises, Inc., d/b/a Streater-Smith Honda, Inc. ("Streater-Smith") at its dealership in Conroe, Texas. Rafiq was born in India and is a practicing Muslim.

Rafiq began having problems with harassment at Streater-Smith immediately following the September 11, 2001 terrorist attacks. When Rafiq arrived at work for his afternoon shift on that day, a number of his co-workers and managers, including Matthew Kiene (a co-worker), Kevin Argabrite (a finance manager), Jerry Swigart (Rafiq's direct supervisor), and Richard Burgoon (the general manager of the dealership), were watching television coverage of the attacks. Upon seeing Rafiq, Kiene called out, "Hey, there's Mohommed," and Argabrite said, "Where have you been?", in a mocking way, at which point everyone began to laugh. Rafiq inferred from these comments "that [his] supervisors and colleagues were implying that [he] had participated in some way in the terrorist attacks against the United States."

After the United States took military action against Afghanistan later in 2001, Kiene and Argabrite began calling Rafiq "Taliban" whenever they saw him (i.e., multiple times per day). In addition, Rafiq's manager, Swigart, also called Rafiq "Taliban" on four or five occasions. Rafiq repeatedly asked Kiene and Argabrite to stop calling him "Taliban," to no avail. He also complained a number of times to Swigart and Burgoon without any real success.

Kiene and Argabrite also allegedly ridiculed and harassed Rafiq in other ways. For example, Kiene asked Rafiq, "Why don't you just go back where you came from since you believe what you believe?" Kiene and Argabrite mocked Rafiq's religious dietary restrictions and his need to pray during the workday. They also often referred to Rafiq as an "Arab," even though Rafiq told them on numerous occasions that he was from India. In addition, Argabrite once played a "Taliban" joke over a speaker on the sales floor. According to Rafiq, this harassment continued through the end of his employment.

On October 16, 2002, Rafiq got into a dispute with his manager, Swigart, after Swigart told him that it was mandatory for all employees to attend a United Way meeting. When Rafiq questioned what, if any, connection there was

between the United Way and his job, Swigart said, "This is America. That's the way things work over here. This is not the Islamic country where you come from." After the confrontation, Swigart issued Rafiq a written warning, which stated that Rafiq "was acting like a Muslim extremist" and that he could not work with Rafiq because of his "militant stance."

On October 26, 2002, Argabrite "banged" on the partition separating Rafiq's office space from the sales floor, and said to Rafiq, "Got you." According to Rafiq, Argabrite allegedly did this every time he walked by Rafiq's office in order to startle him. This time, however, Rafiq responded by banging on the partition himself and saying, "Don't do that." Argabrite then allegedly got in Rafiq's face and told Rafiq that he was a manager, so Rafiq could not tell him what to do. Rafiq later complained to Burgoon about Argabrite's continual harassment. Two days later, Rafiq was fired from Streater-Smith.

Rafiq filed a charge of discrimination with the EEOC on August 18, 2003. The EEOC filed this action against Streater-Smith on August 25, 2004, alleging that Streater-Smith subjected Rafiq to a hostile work environment on the basis of his religion and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Streater-Smith moved for summary judgment, and on August 30, 2005, the district court granted summary judgment in its favor. The district court found that Streater-Smith was entitled to summary judgment because (1) Rafiq's EEOC charge was untimely; (2) the EEOC provided insufficient evidence to establish the existence of severe and pervasive harassment; (3) the EEOC could not establish that Rafiq was harassed on the basis of his national origin; and (4) the EEOC had not shown that Rafiq's emotional distress or mental anguish from the harassment was so severe that it interrupted his daily life. The EEOC filed this appeal.

II.

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. See, e.g., Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hockman v. Westward Commc'ns, L.L.C., 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must therefore "refrain from making credibility determinations or weighing the evidence." Turner, 476 F.3d at 343.

III.

A.

We address first the issue of timeliness. The district court held that Rafiq's EEOC charge was untimely because it was filed 306 days after the last "objective" incident of harassment, to wit: the written warning that Rafiq was acting like a "Muslim extremist." The EEOC argues that the hostile work environment was a single, continuing violation of Title VII that lasted until the date of Rafiq's termination, and that the evidence shows that Rafiq filed his EEOC charge within 300 days of that date.

An individual claiming discrimination in violation of Title VII must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The filing of a timely EEOC charge is a statutory prerequisite to filing suit. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Because a hostile work environment generally consists of multiple acts over a period of time, the

requisite EEOC charge must be filed within 300 days of any action that contributed to the hostile work environment. Id. at 115, 117; see also Pegram v. Honeywell, Inc., 361 F.3d 272, 279-80 (5th Cir. 2004). If that requirement is met, the court may consider all of the acts that are alleged to have contributed to the hostile work environment, even though some of them may have taken place outside of the 300-day filing period. Morgan, 536 U.S. at 117.

Here, the EEOC provided sufficient evidence that Rafiq was harassed after October 16, 2002. Rafiq stated at his deposition that he was called "Taliban" multiple times per day and that Argabrite and Kiene frequently called him an "Arab." He further stated that "this went all the way to the last day." He also filed an affidavit in the district court that specifically states that "[t]hese comments based on my national origin and religion . . . persisted through the end of my employment."

The district court, without citation to any authority, rejected this evidence because it was not "objective." We find this conclusion untenable. Sworn affidavits and deposition testimony are certainly appropriate for review on a Rule 56 motion for summary judgment. See Fed. R. Civ. P. 56(c) (summary judgment appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact") (emphasis added). Viewing this evidence in the light most favorable to the EEOC, a factfinder could easily conclude that Kiene and Argabrite continued to call Rafiq "Taliban" and refer to him as an "Arab" up until his date of termination and thus, that some acts of harassment took place within 300 days of the date on which Rafiq filed his EEOC charge.

In addition, we disagree with the district court that the October 26, 2002 confrontation could not be considered an incident of harassment based on religion or national origin. When evaluating a motion for summary judgment, all reasonable inferences must be drawn in the non-movant's favor. Hockman,

407 F.3d at 325. Here, although Argabrite did not specifically refer to Rafiq's religion or national origin during the incident, considering the context of Argabrite's pattern of harassment based explicitly on religion and national origin, coupled with his practice of banging on the glass partition to allegedly startle Rafiq, a factfinder could easily infer that Argabrite's actions on October 26, 2002 were also taken on account of Rafiq's religion and national origin. See Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 81-82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

Accordingly, because at least one alleged incident of harassment occurred within the requisite 300-day time period, we conclude that Rafiq's EEOC charge was timely.

B.

As noted above, the district court made two findings that essentially disposed of the EEOC's hostile work environment claim on the merits: (1) that the EEOC had not shown that Rafiq lost sales as a result of the alleged harassment that he suffered; and (2) that the EEOC could not bring a claim based on Rafiq's national origin because none of the harassing comments specifically referred to the fact that Rafiq was from India. The EEOC argues that the district court erred in each respect. We agree.

To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. See, e.g.,

6

<u>Harvill v. Westward Commc'ns, L.L.C.</u>, 433 F.3d 428, 434 (5th Cir. 2005); <u>Hockman</u>, 407 F.3d at 325. Only elements (3) and (4) are seriously contested in this case.

The Supreme Court has emphasized that Title VII's prohibition "is not limited to 'economic' or 'tangible' discrimination." <u>Meritor Savings Bank FSB v. Vinson</u>, 477 U.S. 57, 64 (1986). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993) (quoting <u>Meritor Savings Bank</u>, 477 U.S. at 65, 67); <u>see</u> <u>also</u> <u>Harvill</u>, 433 F.3d at 434.

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. <u>Harris</u>, 510 U.S. at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. <u>Id.</u> To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. <u>Id.</u> at 23. No single factor is determinative. <u>Id.</u> In short, a showing that the employee's job performance suffered is simply a factor to be considered, not a prerequisite. <u>Mota v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 261 F.3d 512, 524 n.33 (5th Cir. 2001). As the Supreme Court stated, "even without regard to . . . tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or

national origin offends Title VII's broad rule of workplace equality." Harris, 510 U.S. at 22.

Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment. See Harvill, 433 F.3d at 435-36; El-Hakem v. BJY Inc., 415 F.3d 1068, 1073 (9th Cir. 2005) ("'The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.'") (quoting Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001)); Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1047 (7th Cir. 2002) (stating that severity and pervasiveness are, "to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.") (citation omitted). Indeed, this court has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII. See, e.g., Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000) (holding that African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996) (plaintiff presented sufficient evidence from which a jury could find severe or pervasive harassment where plaintiff was subjected to offensive, sex-based comments two to three times per week).

Here, the district court held that even if Rafiq could prove that any harassment occurred, "he has not shown that it was so severe that it kept him from doing his job." In so holding, the district court applied an incorrect legal standard. Whether Rafiq lost sales as a result of the alleged harassment is

certainly relevant to his hostile work environment claim; but it is not, by itself, dispositive. The district court erred in concluding otherwise.

Applying the totality of the circumstances test, we conclude that the EEOC has presented sufficient evidence to create an issue of fact as to whether the harassment that Rafiq suffered was so severe or pervasive as to alter a condition of his employment. The evidence showed that Rafiq was subjected to verbal harassment on a regular basis for a period of approximately one year. During that time, Rafiq was constantly called "Taliban" and referred to as an "Arab" by Kiene and Argabrite, who also mocked his diet and prayer rituals. Moreover, Rafiq was sporadically subjected to additional incidents of harassment, such as his co-workers' comments on September 11, 2001, which suggested that he was somehow involved in the terrorist attacks against the United States; Kiene's statement that Rafiq should "just go back where [he] came from;" and Swigart's October 16, 2002 written warning, which stated that Rafiq was acting like a "Muslim extremist." Finally, Argabrite frequently banged on the glass partition of Rafiq's office, in order to startle him. As noted above, in the context of Argabrite's other actions toward Rafiq, a factfinder could reasonably conclude that this conduct was also motivated by animus stemming from Rafiq's religion and national origin.

Although no single incident of harassment is likely sufficient to establish severe or pervasive harassment, when considered together and viewed in the light most favorable to the EEOC, the evidence shows a long-term pattern of ridicule sufficient to establish a claim under Title VII. See, e.g., Walker, 214 F.3d at 626; Farpella-Crosby, 97 F.3d at 806; cf. Hussain v. Highgate Hotels, Inc., 126 F. App'x 256, 268-69 (6th Cir. 2005) (plaintiff who was called "Taliban" on a regular basis by co-workers raised issue of fact on hostile work environment claim under state civil rights statute).

In addition, the evidence is sufficient to show that the harassment Rafiq suffered was based on his religion and national origin. First, some of the alleged harassment dealt specifically with Rafiq's Muslim faith, including: (1) mocking comments about his dietary restrictions and prayer rituals; (2) Swigart's written comment that Rafiq was acting like a "Muslim extremist;" (3) Kiene's statement to Rafiq that "We don't want to hear about your religious beliefs" even though Rafiq was not even talking about them at the time; (4) Kiene's question to Rafiq, "Why don't you go back to where you came from since you believe what you believe?"; and (5) Swigart's statement to Rafiq, "This is America. That's the way things work over here. This is not the Islamic country where you came from." Also, a factfinder could reasonably infer that the comments suggesting that Rafiq was (1) involved in the September 11th terrorist attacks and (2) a member of the Taliban because he, like members of the Taliban, was Muslim, were based on his religion.

With respect to national origin, the district court found that the EEOC could not prevail on its claim that Rafiq was harassed on the basis of national origin because none of the alleged harassment related to the fact that Rafiq is from India. The district court is correct that none of the harassing comments directly referred to Rafiq's actual national origin. However, a party is able to establish a discrimination claim based on its own national origin even though the discriminatory acts do not identify the victim's actual country of origin.

Indeed, the EEOC's guidelines on discrimination define "discrimination based on national origin" broadly, to include acts of discrimination undertaken "because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. Nothing in the guidelines requires that the discrimination be based on the victim's actual national origin. The EEOC's final guidelines make this point clear:

> In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the particular national origin group to which the complainant belonged. . . . [I]t is enough to show that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics.

Guidelines on Discrimination Because of National Origin, 45 Fed. Reg. 85,632, 85,633 (Dec. 29, 1980); see also Langadinos v. Appalachian Sch. of Law, No. 1:05CV00039, 2005 WL 2333460, at *1 n.6 (W.D. Va. Sept. 25, 2005) ("The plaintiff may still establish a cause of action under the Civil Rights Act despite the defendant's mistaken belief that his ethnic characteristics are those of a person of Italian, rather than Greek, descent."); Kanaji v. Children's Hosp. of Philadelphia, 276 F. Supp. 2d 399, 401-04 (E.D. Pa. 2003) ("Defendant fails to cite a single case where a court has held that a plaintiff alleging 'national origin' discrimination must specify a 'country' or 'nation' of origin."); LaRocca v. Precision Motorcars, Inc., 45 F. Supp. 2d 762, 770 (D. Neb. 1999) ("The fact that [co-worker] ignorantly used the wrong derogatory ethnic remark toward the plaintiff is inconsequential.").

In this case, the evidence that the EEOC presented supports its claim that Rafiq was harassed based on his national origin. Indeed, several of the challenged statements refer to national origin generally (even though they do not accurately describe Rafiq's actual country of origin): (1) Kiene's comment to Rafiq, "Why don't you just go back where you came from since you believe what you believe?"; (2) Swigart's statement, "This is America. That's the way things work over here. This is not the Islamic country where you come from."; and (3) Kiene's and Argabrite's practice of referring to Rafiq as "Taliban" and calling him an "Arab."

Accordingly, we conclude that the EEOC has submitted sufficient evidence to support its claim that Rafiq was subjected to a hostile work environment both on the basis of religion and on the basis of national origin.

C.

Relying on Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995), the district court held that even if Rafiq had set forth sufficient evidence to support his hostile work environment claim, the EEOC could not recover for his mental anguish because there was no evidence that the anguish or stress that Rafiq suffered "was so debilitating that it interrupted his daily life." In doing so, the district court noted that under Texas law, a plaintiff cannot recover for mental anguish unless the anguish was "so severe that it interrupted his daily routine."

The district court's error is twofold. First, the district court incorrectly applied Texas law to determine whether mental anguish damages could be recovered in this case. The availability of mental anguish damages for a Title VII claim is determined by federal law. See Farpella-Crosby, 97 F.3d at 808 ("Horizon's reliance on state law is misplaced. Compensatory damages in a hostile work environment Title VII case are governed by 42 U.S.C. § 1981a.").

Second, the district court did not view the evidence in the light most favorable to the EEOC. To be entitled to mental anguish damages, a plaintiff must show a discernible injury to the victim's mental state and submit evidence regarding the nature and extent of the alleged harm. See Vadie v. Miss. State Univ., 218 F.3d 365, 376 (5th Cir. 2000). Compensable emotional distress "'may manifest itself . . . as sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown,'" and physical manifestations may include "'ulcers, gastrointestinal disorders, hair loss, or headaches.'" Id. (quoting EEOC Policy Guidance No. 915.002 § II(A)(2), at 10-12 (July 14, 1992)). A claimant's

testimony, without more, may support an award of compensatory damages for emotional distress. See id.

In the instant case, Rafiq testified at his deposition that the alleged harassment caused problems with his family life that led him to seek counseling from several mosques, that he had difficulty sleeping, lost 30 pounds, and suffered gastrointestinal problems. Although Rafiq equivocated about whether his gastrointestinal problems were attributable to the harassment, the record evidence is sufficient to show that the harassment caused some discernible injury to his mental state even when those symptoms are not considered. Accordingly, the district court erred in concluding that the EEOC could not recover for any mental anguish that Rafiq suffered.

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of the defendant-appellee and remand this matter to the district court for proceedings consistent with this opinion.

Reversed and Remanded.