# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 11, 2020

Lyle W. Cayce
Clerk

No. 19-30584
consolidated with
No. 19-30687

DENISE A. BADGEROW, on behalf of herself and a class of those similarly situated,

> Plaintiff - Appellant Cross-Appellee

v.

REJ PROPERTIES, INCORPORATED, doing business as Walters, Meyer, Trosclair and Associates,

> Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, GRAVES, and DUNCAN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Denise Badgerow is a former Associate Financial Advisor (AFA) for REJ Properties, Inc. She was fired and then filed this gender discrimination suit in federal district court. Badgerow appeals the district court's summary

No. 19-30584
c/w No. 19-30687

judgment-dismissal of her claims against REJ.[1]  REJ cross appeals the district court's denial of attorney's fees.  We affirm the district court's grant of summary judgment on Badgerow's disparate pay, hostile work environment, and breach of contract claims.  We also affirm the district court's denial of attorney's fees.  But, because there is a genuine dispute of material fact with respect to whether REJ's proffered reason for Badgerow's discharge is mere pretext for unlawful retaliation, we reverse and vacate the district court's grant of summary judgment on Badgerow's Title VII retaliation claim.  We remand only that aspect of the case for further proceedings.

I.

Badgerow worked at Louisiana-based REJ from January 2014 to July 2016.  In July 2016, REJ terminated Badgerow's employment.  In September 2017, Badgerow filed this gender discrimination suit in the Eastern District of Louisiana.  After discovery, REJ moved for summary judgment.  In connection with REJ's motion, the parties filed a series of deposition transcripts, affidavits, and exhibits that revealed the following facts.

REJ was a small private financial advisory practice affiliated with Ameriprise Financial Services, Inc.  The principals of REJ, during the relevant time of this lawsuit, were Gregory Walters, Thomas Meyer, and Ray Trosclair, all of whom were Ameriprise Franchise Financial Advisors.  Walters originally hired Badgerow as a paraplanner, but she was later promoted to serve as one of his AFAs.  Under REJ's structure, each financial advisor was a franchisee of Ameriprise, and an AFA obtained her license by working under one of the

---

[1] Badgerow does not address the dismissal of her Title VII disparate treatment and Louisiana Employment Discrimination Law claims.  Thus, she has abandoned those claims on appeal.  *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

No. 19-30584
c/w No. 19-30687

franchisees. Further, Badgerow testified that because she worked under Walters, he was the only REJ principal who could fire her.

Badgerow's promotion to the AFA position enabled her to earn commissions, but REJ deducted Badgerow's salary from her earned commissions when the commissions exceeded the amount of her salary draw. According to Badgerow, the salary draw against commissions compensation scheme violated an agreement she had with Walters to pay her $30,000 in salary plus commissions.

During Badgerow's tenure at REJ, three senior male AFAs—David Ponson, Lloyd Kern, and Andrew Walters—were paid a fixed salary plus commissions. Evan Weibel, who began working as an AFA approximately seven months before Badgerow, was also paid a base salary. But Nathan Walters, Christopher Callahan, and John Meyer, who became AFAs after Badgerow, were paid in salary draws against commissions, the same as Badgerow.

According to Badgerow, Thomas Meyer, one of the principals, would bully her through Skype and text messages. For example, Meyer, although he had no direct authority over her, would message Badgerow to criticize how she clocked in and out on her time card. Badgerow felt that Meyer intentionally singled her out for unfair treatment, and she testified that she believed Meyer's behavior towards her was because she is a woman. Badgerow did not support her opinion with other testimony that tied Meyer's messages to her gender. Badgerow, however, testified that Gregory Walters once told her that Meyer was a misogynist and speculated that Meyer "did not want a female . . . as a financial advisor." Walters, however, did not testify to that effect. Badgerow claims that Meyer's bullying included enlisting others to spread rumors that she had engaged in sexually suggestive conduct.

3

No. 19-30584
c/w No. 19-30687

On July 13, 2016, Badgerow discussed concerns specifically about REJ's failure to comply with Ameriprise regulations regarding pay and how REJ treated her with Marc Cohen, an Ameriprise compliance officer who visited the local office annually. Badgerow told Cohen that she "was not sure if she was not treated fairly because she was not family or because she is a woman."[2] On July 26, 2016, Cohen told Walters about the conversation he had had with Badgerow and advised Walters that he should consider consulting an attorney. That same day, Walters terminated Badgerow's employment. According to Walters, he fired Badgerow because of the stress of dealing with constant complaints about Badgerow from her coworkers.

## II.

Badgerow then sued REJ, asserting claims of hostile work environment, gender discrimination, disparate pay, Title VII and Louisiana Employment Discrimination Law retaliation, 42 U.S.C. § 1985 conspiracy, and breach of contract.[3] Badgerow's Title VII disparate treatment claims were brought on behalf of herself and a putative class of similarly situated individuals. Badgerow eventually moved for leave to amend her complaint, which the district court granted in part, allowing Badgerow to withdraw the class action, conspiracy, and joint employer liability claims. Subsequently, the district court granted REJ's motion for summary judgment on Badgerow's remaining claims against it. REJ then moved to recover the attorney's fees it had incurred in defending against Badgerow's action. The district court denied the motion.

---

[2] Some of the AFAs were related to some of the principals; except Badgerow, all the AFAs occupying her job classification were male.

[3] Badgerow also named Ameriprise as a defendant, alleging joint employer liability. The district court granted Ameriprise's motion to compel arbitration as to each of Badgerow's claims against it, and those claims are not the subject of this appeal.

4

No. 19-30584
c/w No. 19-30687

Badgerow then moved for the district court to reconsider its summary judgment ruling.[4]  Badgerow's motion relied, in part, on an untimely supplemental expert report, which she argued demonstrated that she needed additional discovery on her pay disparity claims.  The district court denied Badgerow's motion.  REJ then moved to recover the attorney's fees it incurred in connection with Badgerow's motion to reconsider, and again, the district court declined to award attorney's fees.

Badgerow appeals the dismissal of her complaint.[5]  REJ cross appeals the district court's denial of its supplemental motion for attorney's fees.

### III.

We review a district court's grant of summary judgment de novo, viewing all the facts and evidence in the light most favorable to the non-movant.[6] *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Badgerow moved for reconsideration under Federal Rules of Civil Procedure 59(e) "and/or" 60.  But we view the motion through the lens of Rule 59(e) alone because, on appeal, Badgerow fails to cite the Rule 60 standard of review or otherwise make an argument specific to Rule 60.

[5] Although Badgerow filed a second notice of appeal with respect to the district court's assessment of costs against her, Badgerow's appellate briefs make no specific argument about the assessment of costs.  We decline to address an issue listed in the notice of appeal but not argued. *See In re HEI Exploration Co., Inc.*, 862 F.2d 513, 525 (5th Cir. 1988).

[6] Because Badgerow's Rule 59(e) motion asked only that the district court reconsider its summary judgment ruling on the merits, our review of the district court's denial of the Rule 59(e) motion is also de novo. *See Fletcher v. Apfel*, 210 F.3d 510, 512 (5th Cir. 2000).  It further follows that our analysis of the district court's grant of summary judgment applies with equal force to the denial of Badgerow's Rule 59(e) motion.

No. 19-30584
c/w No. 19-30687

A.

Badgerow brings her disparate pay claims under Title VII and the Equal Pay Act. A plaintiff establishes a prima facie case of wage discrimination under Title VII when she shows that she is a member of a protected class who "was paid less than a non-member for work requiring substantially the same responsibility." *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). To make this showing, Badgerow must offer evidence that her circumstances were "nearly identical to those of a better-paid employee who is not a member of the protected class." *Id.* at 523. (internal quotations and citations omitted). To establish a prima facie case under the Equal Pay Act, Badgerow must show that "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993).

Here, Badgerow has failed to point us to evidence that her circumstances were "nearly identical" to her proffered comparators. Although Badgerow seeks to compare the history of her pay rate to the salary history of the senior male AFAs, she fails to offer evidence showing that when she started as an AFA her job responsibilities and conditions were substantially similar to the job responsibilities and conditions of the senior male AFAs when they started with REJ. The mere fact that Badgerow shared the same job title as the senior male AFAs is insufficient to meet her burden to show that they are proper comparators. *See EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 346–48 (7th Cir. 1988) (concluding that, on their own, "job titles and job descriptions" cannot establish "job equality"). Because Badgerow points us to no evidence of how her job duties compared to the senior AFAs' initial job duties, she cannot

use the alleged disparity between her salary and the senior AFAs' starting salaries to further her wage discrimination claim.

And although in her opening brief on appeal Badgerow contends that she was paid less than Weibel and the other more junior male AFAs, Badgerow makes no argument that the junior AFAs were similarly situated comparators. Badgerow does make this argument in her reply brief, but we do not consider arguments made for the first time in a reply brief. *See Flex Frac Logistics LLC v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014). We thus conclude that Badgerow has waived the argument that she and the junior male AFAs shared "nearly identical" circumstances. We thus affirm the district court's grant of summary judgment with respect to Badgerow's wage discrimination claims.

B.

Turning to Badgerow's hostile work environment claim, Badgerow must demonstrate that:

> (1) [she] belongs to a protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) [her] employer knew or should have known of the harassment and failed to take prompt remedial action.

*EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "When the workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations omitted). For conduct to be considered sufficiently severe or pervasive, it "must be both objectively and subjectively offensive." *WC&M Enters.*, 496 F.3d at 399. In determining whether an employee's work environment was objectively

offensive, we consider the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* "No single factor is determinative." *Id.*

On appeal, Badgerow bases her hostile work environment claim on Meyer's alleged bullying of her, through Skype messages and other perceived slights, such as requiring her to punch in on a time card. She also claims that she was the victim of workplace rumors. We agree with the district court that Badgerow lacks evidence that Meyer's alleged conduct towards her was based on her gender. None of the Skype messages referenced Badgerow's gender, and besides her own subjective belief that Meyer's actions were based on gender animus, Badgerow has presented no competent summary judgment evidence that Meyer's alleged bullying was motivated by her gender. Although Badgerow testified that Walters told her that Meyer did not like female AFAs because he "was a misogynist," this evidence is the type of speculation that is insufficient to withstand summary judgment. *See Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012) ("Although all justifiable inference[s] must be drawn in favor of the non-movant, the non-movant still cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." (citations omitted)). Put simply, Badgerow's subjective beliefs and Walters's alleged speculation fail to establish that Meyer's alleged harassment "was based on a protected characteristic." *WC&M Enters.*, 496 F.3d at 399. Thus, the district court did not err when it concluded that Meyer's actions could not support Badgerow's hostile work environment claim.

No. 19-30584
c/w No. 19-30687

Badgerow also asserts, generally, that her coworkers created a hostile work environment by starting various false rumors of a sexual nature about her.    Although these alleged rumors may have been based on gender stereotypes, Badgerow has failed to explain the frequency with which she was subjected to these rumors and whether they interfered with her job performance.    Indeed, Badgerow has pointed us to no evidence that she was even aware of these specific rumors during her employment with REJ.    Thus, she has failed to show that the alleged rumors were "sufficiently severe and pervasive to alter the conditions of [her] employment and create a hostile working environment."    *Harris*, 510 U.S. at 21 (internal quotations omitted). In short, Badgerow has not raised a question of relevant fact as to whether these rumors created an actionable hostile work environment.    Accordingly, we affirm the district court's grant of summary judgment with respect to Badgerow's hostile work environment claim.

C.

We next consider Badgerow's Title VII retaliation claim, which the parties agree is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).    We begin by discussing the applicable legal principles.

1.

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden to show: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations and citations omitted).    We have interpreted Title VII's opposition clause to mean that a plaintiff engages in protected activity when she complains of an

employment practice that she "reasonably believes" violated Title VII. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016). If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met her burden to establish a prima facie case of retaliation. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

Once the plaintiff meets her initial burden, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *See McDonnell Douglas*, 411 U.S. at 802. If the employer proffers a legitimate, nondiscriminatory reason, the burden then returns to the plaintiff to prove that the employer's reason is pretext for unlawful discrimination. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005). At the pretext stage, the plaintiff must offer evidence "that the adverse action would not have occurred but for [her] employer's retaliatory motive." *See Feist v. La., Dep't of Justice Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "[T]he combination of suspicious timing with other significant evidence of pretext . . . can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).

2.

We now turn to consider the specifics of Badgerow's retaliation claim. Before the district court, Badgerow's retaliation claim focused on her contention that Walters fired her for complaining about Meyer's harassment. But, on appeal, Badgerow relies exclusively on her conversation with Cohen to demonstrate that she engaged in protected activity for which she was terminated. With respect to Badgerow's conversation with Cohen, the district

court held that the conversation did not constitute protected activity and, alternatively, that Badgerow failed to establish causation.[7]

As evidence that her conversation with Cohen constituted protected activity, Badgerow points out that she told Cohen that REJ was treating her unfairly and that "she was not sure if she was not treated fairly because she was not family or because she is a woman." She also notes that her conversation with Cohen led him to recommend that Walters hire a labor attorney. With respect to causation, Badgerow argues that it is undisputed that Walters fired her the same afternoon that Cohen informed Walters about her complaint. She further argues that, at best, there is a question of fact with respect to whether Walters knew, at the time of her discharge, that she had complained to Cohen that she may have been treated unfairly because she is a woman. As Badgerow points out, although Walters testified that the only details Cohen divulged about Badgerow's compliance review was that Walters should "get a labor attorney," Cohen's notes about his conversation with Walters state that he "did mention to [Walters] that [Badgerow] said she was not sure if she was not treated fairly because she was not family or because she is a woman."

We thus agree with Badgerow that, although there is an issue of relevant fact disputed by Walters, *i.e.*, Walters denies ever having been told by Cohen that Badgerow's complaint was gender related, she has established a prima

---

[7] The portion of Badgerow's district court brief dedicated to her retaliation claim does not represent that Badgerow told Cohen that she was being discriminated against because of her sex. Instead, Badgerow merely asserted that she complained to Cohen about not being paid through a payroll provider. But, in reviewing the summary judgment evidence, the district court considered whether Badgerow's complaints to Cohen about alleged unfair treatment as a woman supported her retaliation claim. And REJ makes no argument that Badgerow failed to preserve the argument.

facie case of retaliation by pointing to evidence that (1) she told Cohen that she may have been treated unfairly because she is a woman and (2) was fired within hours of Cohen informing Walters about this specific complaint.

REJ, in turn, has provided a legitimate, nondiscriminatory reason for Badgerow's firing—that Walters was constantly receiving complaints from Badgerow's coworkers about her workplace behavior. Accordingly, the burden shifts back to Badgerow to offer evidence of pretext.

3.

We thus examine in more detail whether Badgerow has offered sufficient evidence of pretext to survive summary judgment on her retaliation claim. The timing of Badgerow's firing is highly indicative of motive. According to Badgerow's version of events the day she was fired, she received a call from Walters who said that he had "just got off the phone with Marc Cohen" and would call her back. When Walters called Badgerow back, he asked her to travel from her office in Houma to his office in Thibodaux so that he could speak with her in person. During their in-person meeting, Walters terminated Badgerow's employment. Thus, Badgerow's firing occurred in the immediate aftermath of Walters being informed of Badgerow's complaints to Cohen.

And Badgerow has adduced other significant evidence of pretext. For example, although REJ states that Walters fired Badgerow due to constant complaints from her coworkers, Badgerow asserts that the only explanation he gave for her firing was that she had "dinged his perfect . . . record" with Ameriprise. And Walters admits that immediately before firing Badgerow he told her that Cohen had said he needed to hire a labor attorney and asked "[d]o I have to worry about you suing me?" Finally, although Walters testified that Badgerow's coworkers had been complaining to him about her behavior for months, Walters seemed determined to keep Badgerow as one of his AFAs until

his conversation with Cohen. *Cf. Garcia*, 938 F.3d at 245–46 ("Garcia presents significant evidence showing that the company knew about his . . . mistakes years before he engaged in protected activity, thus undermining the company's claim that he was fired for this conduct and not because of his protected activity."). A reasonable fact finder could infer from this evidence that REJ's proffered reason for Badgerow's firing was pretext for unlawful retaliation. Accordingly, we reverse the district court's finding to the contrary.

## D.

Finally, we address the district court's dismissal of Badgerow's breach of contract claim. According to Badgerow, REJ breached an oral agreement to pay her a fixed $30,000 salary plus commissions. Under Louisiana law, which the parties agree applies to Badgerow's breach of contract claim, "[a] contract is formed by the consent of the parties established through offer and acceptance" and, thus, requires "a meeting of the minds." *Read v. Willwoods Cmty.*, 165 So. 3d 883, 887 (La. 2015). Because the value of Badgerow's alleged contract exceeds five hundred dollars, Louisiana law "requires that the contract be proved by the testimony of 'one witness and other corroborating circumstances.'" *Id.* at 887–88 (quoting La. Civ. Code art. 1846).

We agree with the district court that Badgerow has failed to create a genuine dispute of material fact with respect to her breach of contract claim. Badgerow points out that she testified that: "When I was originally hired, I was offered salary plus commission." But Badgerow neglects to mention that in the sentence following this statement she testified that "[w]hen I started making commission my pay changed to salary draw." And Badgerow further testified that, when she started making commissions, she "verbally agreed to be paid" a salary draw. Contrary to Badgerow's assertion, then, her statement that she was offered "salary plus commission" when she was "originally hired"

13

is not testimony supporting a fixed-salary contract for the period after she started receiving commissions. Instead, as the district court concluded, "it is clear from Badgerow's own testimony" that once Badgerow started to receive commissions, she agreed to change her compensation scheme to a salary draw against commissions. Thus, REJ did not breach any agreement with Badgerow when, after she received commissions, it deducted the amount of her salary draw from her earned commissions. To the point: this claim was properly dismissed.

## E.

In sum, we affirm the district court's grant of summary judgment with respect to Badgerow's disparate pay, hostile work environment, and breach of contract claims for lack of a genuine dispute of material fact. But a reasonable fact finder could rule in Badgerow's favor on her Title VII retaliation claim. We therefore reverse the district court's grant of summary judgment on that claim alone. We now turn to the cross appeal of REJ.

## IV.

In its cross appeal, REJ argues that the district court improperly denied its supplemental motion for attorney's fees, which was only associated with the costs it incurred in responding to Badgerow's Rule 59(e) motion. REJ moved for attorney's fees under 42 U.S.C. § 2000e-5(k), which provides that in Title VII actions "the court, in its discretion, may allow the prevailing party, other than the Commission and the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ." *See* 42 U.S.C. § 2000e-5(k).

Under this statute, "[p]revailing civil rights plaintiffs are to recover fees in all but special circumstances." *Commonwealth Oil Refining Co. v. EEOC*, 720 F.2d 1383, 1385 (5th Cir. 1983) (internal quotations and citations omitted). But "[p]revailing defendants may recover only upon a finding that the

plaintiff's claim is frivolous, unreasonable, groundless, made in bad faith, or persisted in after its character as one of these has become clear." *Id.* In determining whether a plaintiff's claims are frivolous, courts should consider "whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial." *See Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000) (emphasis omitted). "These factors are, however, guideposts, not hard and fast rules." *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 425 (5th Cir. 2011). We review the district court's denial of REJ's motion for attorney's fees for abuse of discretion. *See Hadley v. VAM P T S*, 44 F.3d 372, 375 (5th Cir. 1995).

As the district court observed, Badgerow's only clearly meritless claims were her class allegations for Title VII disparate treatment. Badgerow voluntarily withdrew those claims prior to the district court's summary judgment ruling, and the class allegations were not litigated in connection with Badgerow's Rule 59(e) motion. Thus, we cannot say that the district court abused its discretion when it declined to award attorney's fees based on Badgerow's continued pursuit of her other claims through her Rule 59(e) motion. To be sure, Badgerow should have known that it was futile to attach an untimely expert report to her Rule 59(e) motion. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (noting that Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment"). But we are unpersuaded that, even after the district court's grant of summary judgment, it had become clear that the Title VII claims that Badgerow continued to pursue were so devoid of evidentiary support that they should be considered "frivolous, unreasonable, [or] groundless." *Commonwealth Oil Refining*, 720 F.2d at 1385. Indeed, we have held that the district court erred

15

No. 19-30584
c/w No. 19-30687

when it granted summary judgment on Badgerow's Title VII retaliation claim. And it is perhaps possible that Badgerow could have made out a prima facie case of disparate pay and hostile work environment with either a different argumentation or marshalling of the facts. Thus, we conclude that the district court acted within its discretion when it determined that this case falls outside "the more select category of frivolous cases where a defense-based fee award is appropriate." We therefore affirm the district court's denial of REJ's motion for attorney's fees.

V.

We sum up: The district court did not err by granting summary judgment on Badgerow's disparate pay, hostile work environment, or breach of contract claims. We have also held that the district court did not err in denying REJ's supplemental motion for attorney's fees.

We do hold, however, that Badgerow has satisfied her burden under the *McDonnell Douglas* framework to show that whether her termination was pretext for unlawful retaliation remains a disputed issue of fact that must be determined by the appropriate fact finder. Thus, the district court erred in granting summary judgment on Badgerow's Title VII retaliation claim. That aspect of the case is remanded for further proceedings not inconsistent with this opinion. In all other aspects, the judgment of the district court is affirmed.

Accordingly, for the reasons that we have set out in this opinion, the judgment of the district court is

AFFIRMED in part; REVERSED and VACATED in part; and REMANDED.

16