# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 12, 2021

Lyle W. Cayce
Clerk

No. 20-30525

Fannie Brown,

*Plaintiff—Appellant*,

*versus*

Wright National Flood Insurance Company; Liberty
Personal Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-1069

Before King, Dennis, and Ho, *Circuit Judges*.

Per Curiam:*

Plaintiff Fannie Brown appeals the district court's dismissal with prejudice of her claims against Wright National Flood Insurance Company ("Wright") and Liberty Personal Insurance Company ("Liberty"). We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30525

## I.

These insurance disputes arise out of damages allegedly sustained from two separate events—a flood in Baton Rouge, Louisiana in 2016, and a motor vehicle accident in 2017.  Brown, a Louisiana citizen, owns residential property in Baton Rouge.  On August 13, 2016, Brown's property was damaged as a result of a serious flood event.  At the time, Brown's property was insured under two policies: (1) a Standard Flood Insurance Policy ("SFIP") issued by Wright and (2) a homeowner's insurance policy issued by Liberty.

Wright, a citizen of Texas and Florida, issued the SFIP in accordance with the National Flood Insurance Program ("NFIP").  "An SFIP is 'a regulation of [the Federal Emergency Management Agency], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders.'"  *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015) (quoting *Marseilles Homeowners Condo. Ass'n Inc. v. Fidelity Nat'l Ins. Co.,* 542 F.3d 1053, 1054 (5th Cir. 2008)).  Article VII of the SFIP addresses the policy's proof-of-loss requirement.  It reads, in pertinent part: "In case of a flood loss to insured property, [the insured] must: . . . Within 60 days after the loss, send [the insurer] a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you[.]"  44 C.F.R. pt. 61, app. A(1) art. VII(J).

Following the flood, Brown filed a claim with Wright for damages.  After an adjuster inspected the property, Brown signed a sworn Proof of Loss for $110,245.46, which Wright paid in full in February 2017.  In August 2017, a second adjuster inspected Brown's property and estimated $145,883.47 in total damages stemming from the flood.  Brown signed a Proof of Loss for that amount, and Wright issued supplemental payments, bringing its total

2

payments to Brown to $145,883.47.  Brown has not submitted any further signed and sworn Proofs of Loss to Wright.

In 2016, Brown also filed a claim pursuant to her homeowner's insurance policy with Liberty, a citizen of New Hampshire and Massachusetts.  She sought compensation for property damage and assistance with living expenses occasioned by the flood.  Her homeowner's insurance policy provided coverage for various types of losses but expressly excluded coverage for flood damage.  Section I of the policy, which is titled "Exclusions," states:

> We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . .
>
> **Water damage**, meaning:
>
> (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; . . .
>
> (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Based on this exclusionary language, Liberty denied Brown's claim.

Brown also held an automobile liability policy issued by Liberty.  The policy provided, *inter alia*, economic-only uninsured/underinsured motorist ("UM") coverage.  Under this policy, Liberty compensates an insured for her economic losses only when her covered losses exceed the liability limits of an underinsured tortfeasor's motor vehicle policy.  Economic losses are defined by the policy as including, *inter alia*, reasonable medical expenses and lost wages or salary.  Non-economic losses, which are excluded from

coverage, include "pain; suffering; inconvenience; mental anguish, and any other non-economic damages otherwise recoverable under the laws of Louisiana" (capitalization altered and numbering omitted).

In January 2017, Brown's motor vehicle was struck by Geraldine Clark. Clark, whose fault for the collision was uncontested, had automobile insurance through Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau") with coverage capped at $15,000.

In January 2018, Brown, represented by counsel, filed suit in Louisiana state court against Liberty, Clark, and Farm Bureau for claims arising from the motor vehicle accident. As to Liberty, Brown sought payment for economic losses insofar as they exceeded the limits of Clark's automotive policy with Farm Bureau. In August 2018, Brown settled her claims against Clark and Farm Bureau, and these defendants were dismissed from the case.

Later that month, Brown amended her suit to assert additional claims against Liberty and to add Wright as a defendant. Brown's new causes of action all related to the 2016 flood. Regarding Wright, Brown alleged that the insurer owed her an additional payment under her SFIP beyond the amount it had already disbursed. She further claimed that Liberty, pursuant to her homeowner's policy, owed payment for damages and expenses incurred due to the flood. Both insurers, Brown alleged, had violated Louisiana law by engaging in unfair and deceptive insurance practices in their processing of her flood-related claims. Brown alleged that the full amount of her losses exceeded $290,000.

With the consent of Liberty, Wright removed the suit to federal court on December 7, 2018, invoking the court's federal question jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1331 & 1367, and diversity jurisdiction under 28 U.S.C. § 1332.

Brown moved to remand the case to state court on February 8, 2019. The district court denied the motion. Without reaching the issue of federal question jurisdiction, the court determined that it had diversity jurisdiction and that Brown had waived any procedural defects in regard to removal by failing to file a motion to remand within thirty days of the filing of the notice of removal.

Following discovery, Liberty filed a motion for partial summary judgment on Brown's homeowner's insurance policy claims. Liberty contended that the policy expressly excluded coverage for losses caused by flooding, and therefore Brown was not entitled to payment from Liberty for her flood-related losses. In November 2019, the court granted the motion. Noting that Brown did not oppose the motion or request an extension of time to respond, the district court permitted Brown fourteen days to explain why she had not complied with the court's filing deadlines and to submit a memorandum in opposition to Liberty's motion. Brown failed to do so.

Wright also filed a motion for partial summary judgment on Brown's SFIP claims relating to the 2016 flooding. Wright argued that Brown failed to comply with the requirements of the SFIP because she had not timely submitted a signed and sworn Proof of Loss for a sum greater than the amount she had already been paid by Wright. The district court agreed and granted Wright's motion on July 23, 2020.

On the same day, the district court also denied Brown's motion for summary judgment against Liberty and Wright. The court found that, "despite [its] best efforts to parse it, [the motion] is so convoluted and poorly structured that it fails to advance any coherent argument whatsoever." Brown had not "clearly identified the claims at issue nor furnished competent summary judgment evidence in support of a comprehensible argument," and thus failed to carry her burden at summary judgment. On

August 10, 2020, Brown filed a notice of appeal styled as a "Motion to Appeal."

Separately, Liberty filed a motion for partial summary judgment on Brown's claims regarding her UM coverage. Liberty argued that, in order to recover damages under the economic-only provision of her automobile policy, Brown was required to prove, *inter alia*, that (1) Clark, the party responsible for the accident, was uninsured or underinsured and (2) Brown had sustained economic losses, as defined by the policy, exceeding the $15,000 that she had already been paid by Clark and Clark's insurer, Farm Bureau. Because Brown failed to identify any evidence that she suffered economic damages exceeding $15,000, Liberty asserted that Brown could not prove damages, an essential element of her UM claim.

On August 17, 2020, the district court granted Liberty's motion. The court determined that Brown had not produced any evidence on the extent of her damages as required to prevail on her claim for payment of economic losses under her UM policy. The court also dismissed Brown's related claim against Liberty for bad faith penalties because that claim is not viable when the underlying claim for payment under the policy fails.

The district court entered judgment dismissing Brown's claims against Liberty and Wright with prejudice on August 19, 2020. Thereafter, on August 28, 2020, Brown filed a "Notice of Appeal Amending the Motion for Appeal."

## II.

We review *de novo* the district court's order denying remand, and its orders granting summary judgment and partial summary judgment. *Holder v. Abbott Labs., Inc.*, 444 F.3d 383, 386 (5th Cir. 2006); *EEOC v. WC&M Enterprs., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). In reviewing a summary judgment, we apply the same standards as the district court. *WC&M*

*Enterprs.*, 496 F.3d at 397.  Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

Brown first challenges the district court's denial of her motion to remand.[1]  She asserts various arguments as to why removal was purportedly "waived" by Liberty.  Title 28 U.S.C. § 1447(c) provides, in pertinent part: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal[.]"  Brown filed her motion to remand well after the thirty-day period to challenge non-jurisdictional defects expired, and therefore forfeited any argument that Liberty waived removal.  *See, e.g.*, *In re Shell Oil Co.*, 932 F.2d 1518, 1523 (5th Cir. 1991) (holding that "plaintiffs have waived any non-jurisdictional grounds for remand existing at the time of removal by not moving to remand within 30 days of the notice of removal").

Brown also argues that the district court should have remanded the case to state court because it lacked subject matter jurisdiction.  Brown's contention appears to rest on the supposition that the pleading the federal court should look to in evaluating whether diversity jurisdiction existed at the time of removal is her original state court petition and not her amended state court petition—even though the latter was the operative petition at the time

---

[1] Brown's original notice of appeal was premature because it was filed before final judgment had been rendered, and the district never certified the orders granting partial summary judgments for interlocutory appeal under Federal Rule of Civil Procedure 54(b). But, "[b]ecause [Brown] filed a second, timely notice of appeal from the district court's final summary judgment order" and its entry of final judgment, we have jurisdiction over this appeal. *Macklin v. City of New Orleans*, 293 F.3d 237, 240 n.1 (5th Cir. 2002).

of removal.[2] Because Clark and her insurer, Farm Bureau, were defendants in the original petition and because they, like Brown, are Louisiana citizens, their presence in the case destroys diversity, according to Brown. This is so, Brown argues, despite the fact that both Clark and Farm Bureau were dismissed with prejudice on August 20, 2018, and thus were no longer parties at the time Brown filed her amended petition on August 31, 2018, nor, of course, when Wright removed the action in December 2018.

It is well-established that "[t]he jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). There is no dispute that, at the time of removal, the parties to the case were completely diverse, and it is irrelevant for purposes of federal jurisdiction that, at some earlier time, there was a lack of diversity. *See id.*[3]

Brown also suggests that the amount-in-controversy requirement is not satisfied. "This requirement is met if . . . it is apparent from the face of

---

[2] We note that Brown is represented by counsel on appeal just as she was in her district court proceedings. Counseled briefs are not accorded the same liberal construction given to arguments raised by *pro se* litigants. *E.g. United States v. Villarreal-Gonzalez*, 265 F. App'x 429, 430 (5th Cir. 2008).

[3] Brown's reliance on *Cavallini v. State Farm Mut. Auto Ins. Co.* is misplaced. *See* 44 F.3d 256 (5th Cir. 1995). Brown cites the following sentence in *Cavallini*, which is actually contained in a citation to another case: "The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one [removal based on diverse defendant's claim that controversy as to it was separable from claims against nondiverse defendants] was to be determined according to the plaintiffs' pleading at the time of the petition for removal." *Id.* at 264 (alterations in original) (quoting *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Contrary to Brown's contention, this quotation makes clear that the plaintiff's pleading that is to be considered in determining the existence of diversity jurisdiction is the one that is operative "at the time of . . . removal." *Pullman Co.*, 305 U.S. at 537. In this case, that pleading is Brown's amended petition, and, again, there is no dispute that parties to the amended petition are completely diverse.

the petition that the claims are likely to exceed $75,000." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Here, Brown's petition alleges that the insurers owe her more than $290,000 for flood-related property losses. The amount-in-controversy requirement is easily met. *See id.* The district court had subject matter jurisdiction and properly denied the motion to remand.

Brown fails to discernibly challenge the district court's grants of partial summary judgment to Liberty and summary judgment to Wright or its denial of her motion for summary judgment. She thus forfeits any challenge to these orders. *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (citing, *inter alia*, FED. R. APP. P. 28(a)([8])(A)). Moreover, even if Brown had not forfeited argument respecting these orders, the district court committed no reversible error.

As to the claims against Liberty in connection with Brown's homeowner's insurance policy, the language in the policy unambiguously excludes coverage for flooding. Brown thus cannot prevail on her claim for loss-of-use and property damage caused by flooding in 2016. Likewise, summary judgment for Liberty was appropriate as to the claims against Liberty arising out of Brown's economic-only UM policy. Louisiana law requires that an insurer be provided with sufficient facts to "establish the extent of" an insured's damages. *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03); 857 So. 2d 1012, 1022. Brown failed to produce competent summary judgment of her damages, and hence could not sustain an essential element of her uninsured motorist claim. *See id.* Consequently, she also could not maintain a bad faith claim against Liberty. *See id.* 1020-21.

Last, Brown's claim against Wright relating to her SFIP lacks merit. As "an insurance policy issued pursuant to a federal program," the provisions of an SFIP are to be "strictly construed and enforced." *Ferraro*,

796 F.3d at 532 (quoting *Gowland v Aetna*, 143 F.3d 951, 955 (5th Cir. 1998)). The plain language of Wright's SFIP requires the policyholder to provide a "signed and sworn" Proof of Loss.  44 C.F.R. pt. 61, app. A(1) art. VII(J). Further, the policy requires compliance with this provision in order for suit to be brought against the insurer:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. . . . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

*Id.* art. VII(R).  "An insured's failure to strictly comply with the SFIP's provisions—including the proof-of-loss requirement—relieves the federal insurer's obligation to pay the non-compliant claim." *Ferraro*, 796 F.3d at 534.  Brown provided no evidence that she submitted a signed and sworn Proof of Loss to Wright for damages related to the 2016 flooding in excess of the amount Wright already paid to her.  Accordingly, Brown failed to raise a genuine issue as to whether she complied with a condition precedent, imposed by regulation, for her to sue Wright.  The district court thus properly granted summary judgment to Wright.  And because the district court correctly granted summary judgment on all claims to the insurers, it did not err in denying Brown's motion for summary judgment.

## IV.

For these reasons, the judgment of the district court is AFFIRMED.