

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00058-CV

_____

CRISTINA RIVAS, Appellant

V.

ESTECH SYSTEMS, INC., Appellee

On Appeal from the 366th District Court
Collin County, Texas
Trial Court No. 366-02406-2016

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In early 2016, Cristina Rivas found a hidden camera that had been attached to the underside of her desk at Estech Systems, Inc. Estech immediately gave Rivas the rest of the week off, called the police, and began an investigation. Soon thereafter, John Michael Griffin, Estech's controller and one of Rivas's supervisors, confessed that he had placed the camera under Rivas's desk. Griffin's employment was terminated within minutes. Over the next four weeks, Estech allowed Rivas to work when she was able, paid her for the time she was not able to work, rearranged their offices, and arranged for her to receive counseling. Nevertheless, less than a month after her shocking discovery, Rivas resigned her employment.

Rivas subsequently filed suit against Estech, alleging that Estech was liable for sexual harassment, retaliation by constructive discharge, intrusion on seclusion, and intentional infliction of emotional distress. From a summary judgment for Estech on all of Rivas's claims, granted by the 366th Judicial District Court of Collin County,[1] Rivas appeals, contending that the trial court erred by granting summary judgment on her sexual harassment claim. Because we find that Estech was not entitled to a judgment as a matter of law on Rivas's sexual harassment claim, we reverse the trial court's judgment on that claim and remand it to the trial court for further proceedings. We affirm the trial court's judgment on Rivas's other claims.

A trial court's grant of summary judgment is reviewed de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "We review the evidence

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)).

When "there is no evidence of one or more essential elements of a claim or defense on which an adverse party" has the burden of proof, a party may qualify for a no-evidence summary judgment. TEX. R. CIV. P. 166a(i). "To defeat a no-evidence motion, the nonmovant must produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element of its cause of action." *Vonocom, Inc. v. Advocare Int'l, LP*, No. 05-19-00610-CV, 2020 WL 1528496, at *3 (Tex. App.—Dallas Mar. 31, 2020, no pet.) (mem. op.) (citing *Merriman*, 407 S.W.3d at 248). "If the nonmovant fails to do so, the trial court must grant a no-evidence summary judgment motion. *Id.* (citing TEX. R. CIV. P. 166a(i)). "Less than a scintilla of evidence exists when it is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))).

3

"To prevail on a traditional motion for summary judgment, a movant must conclusively establish there is no genuine issue of material fact and, therefore, the movant is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c). "A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence." *Vonocom*, 2020 WL 1528496, at *3 (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)). "If the movant establishes its right to judgment as a matter of law, then the burden shifts to the nonmovant to either present evidence raising a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element, or conclusively prove all elements of an affirmative defense." *Id.* (citing *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)). "More than a scintilla of evidence exists when reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence." *Id.* (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007)).

When, as here, a party moves for summary judgment on both traditional and no-evidence grounds, we address the no-evidence grounds first. *Merriman*, 407 S.W.3d at 248. If the nonmovant fails to produce legally sufficient evidence to meet her burden as to the no-evidence motion, there is no need to determine whether she met her burden under the traditional motion. *Id.*

In her first issue, Rivas asserts that she provided more than a scintilla of evidence that Griffin's harassing conduct affected the terms and conditions of her employment. Rivas brought her claim for sexual harassment under the Texas Commission on Human Rights Act (TCHRA).

4

*See* TEX. LAB. CODE ANN. § 21.051. Under Section 21.051, an employer is prohibited from discriminating against an individual because of race, color, disability, religion, sex, national origin, or age. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Sexual harassment is a form of prohibited employment discrimination based on sex. *Id.* Because the TCHRA is based on federal law and has the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964, "federal law may be cited as authority in cases relating to the" TCHRA. *Id.* at 445–46.

"Sexual harassment claims generally take either of two forms: (1) quid pro quo harassment, in which employment benefits are conditioned on sexual favors; and (2) harassment that creates a hostile or offensive work environment." *Id.* at 445 n.5 (citing *Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex. App.—Austin 1991, writ denied)). The parties agree that Rivas asserted her harassment claim based on an allegedly hostile work environment.

To establish a hostile work environment claim involving a co-worker, a plaintiff must show that (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *City of Laredo v. Negrete*, No. 04-08-00737-CV, 2010 WL 454921, at *5 (Tex. App.—San Antonio Feb. 10, 2010, pet. denied) (mem. op.). However, when "the alleged harassment is perpetrated by a supervisor[2] with immediate or successively higher

---

[2]The United States Supreme Court has held that in this context, a person is a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

5

authority, the employee need only satisfy the first four elements set forth above." *Id.* (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)). In other words, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."[3] *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). In this case, the parties have considered the alleged perpetrator as a supervisor with immediate or successively higher authority, both at trial and on appeal, and we will do the same.

In its motion for summary judgment, Estech did not challenge the first three elements. Rather, Estech asserted only that there was no evidence of, or that it was entitled to judgment as a matter of law on, the fourth element, that the harassment affected a term, condition, or privilege of employment.[4] In order for harassment to affect a term, condition, or privilege of employment, it must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 138 (Tex. 2015). The work "environment must be both objectively and subjectively offensive,

---

responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[3]An employer may have an affirmative defense to liability if no tangible employment action has been taken against the employee. *Faragher*, 524 U.S. at 807.

[4]In its motion, Estech also asserted that the evidence showed that it had no knowledge of the harassment and that it took prompt remedial action. However, these grounds were asserted in relation to the fifth element of a sexual harassment claim, which only applies when the perpetrator was a non-supervisor employee. At the hearing on its motion, Estech affirmatively represented to the trial court that the sexual harassment was perpetrated by a supervisor and that the case should be analyzed on that basis. In its brief in this Court, Estech analyzed the case as a "hostile-work-environment supervisor harassment" and acknowledged that Rivas's prima facie case did not require her to show the fifth element, i.e., that the employer knew or should have known of the harassment and failed to take adequate remedial action. Consequently, these grounds would not support the summary judgment granted in this case.

6

one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). Courts determine whether the environment was abusive or hostile "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787–88 (quoting *Harris*, 510 U.S. at 23). A hostile or abusive work environment "can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). "The effect on the employee's psychological well-being is . . . relevant to determining whether the plaintiff actually found the environment abusive." *Id.* at 23. However, "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Id.*

We consider the summary judgment evidence as it relates to this fourth element. Rivas went to work for Estech as an accounts payable specialist on August 27, 2013. Her immediate supervisor was Martha Herzer, who reported to Griffin. Griffin was the controller for Estech from November 3, 1997, until his termination on March 7, 2016.

On the morning of March 7, 2016, Rivas dropped her bags on her desk at Estech and heard something fall. Rivas found something the size of a videotape and took it to Dana Russ in Estech's IT department. Russ told her that it was a camera, showed her two photographs[5] on the camera, and asked where she had found it. An examination of Rivas's desk revealed that the

---

[5]In addition to these photographs, an investigating officer showed Rivas three photographs from the camera. Some of the photographs showed the side of her legs, and others showed the inside surfaces of her legs and her underwear.

camera had been in a cardboard box that was duct-taped to the underside of Rivas's desk. At that point, Rivas realized that it had been positioned to face her legs.[6]

After Russ notified Becki Veals, Estech's director of human resources, of what happened, Veals telephoned[7] Rivas and told her to take the rest of the week off, with pay. Veals called the police, then called Griffin to let him know what happened and that the police were coming to investigate. About fifteen minutes later, Griffin called Veals and confessed that he had placed the camera under Rivas's desk.[8] Veals instructed Griffin to leave the office immediately, and, after she talked with Estech's chief executive officer, she terminated Griffin's employment. She then called Rivas to let her know that Griffin had confessed.

Rivas testified that she was upset and scared and that she had a panic attack and cried uncontrollably that day because Griffin knew where she lived, and she thought he might come to her house. After the first day, she did not cry uncontrollably, but she was still scared. When Rivas returned to work on March 14 and told Veals that she was not comfortable working in the same cubicle, Veals told her to take off the next two days and promised to work on the situation. Saying she was preparing for a previously announced office renovation, Veals had the entire accounting department moved to the front of the building. Rivas worked on the morning of

---

[6]There was no evidence regarding the length of time Griffin had been photographing or recording Rivas. However, Rivas alleged in her First Amended Petition that the police investigation showed that Griffin had installed the camera several months before Rivas discovered it. The evidence also showed that Griffin had recorded or photographed another female accountant in the same manner during the same time period.

[7]Veals was on vacation at the time.

[8]Griffin told Veals that he had "been fighting demons for years . . . but they got the better of [him]." Griffin testified that he has had an issue with voyeurism for over fifteen years.

8

March 16, then took off that afternoon for a counseling appointment.[9]  Over the next two and one-half weeks, Rivas worked several one-half days and two full days and took off four days.[10]  She explained that she felt that the other employees treated her differently, that she had not been able to sleep, that she dreaded going to work, and that, when she did work, she would be comfortable for a few hours, then she would get impatient and irritated.

On March 28, Rivas tendered her resignation, effective April 1, 2016.  In her resignation letter, Rivas pointed to the March 7 incident as the reason for her resignation.  She noted that it had made a big impact on both her personal life and her job performance and that the incident had impacted her to the point that coming to Estech had become a challenge.

In this case, the frequency of the discriminatory conduct is unclear.  Rivas testified that she was shown a total of five photographs from the camera, but there is no evidence of when those photographs were taken.  Rivas also alleged in her first amended petition that the police investigation into the incident determined that the camera had been placed under her desk several months before its discovery.  Although Rivas did not discover the camera until March 7, the knowledge that it had been placed there for an indeterminate amount of time could certainly contribute to a reasonable employee's, as well as Rivas's, perception that the work environment was abusive or hostile.

In addition, the United States Supreme Court has recognized the possibility that even an isolated incident, if extremely serious, may be sufficient to change the terms and conditions of

[9]Estech helped Rivas set up an appointment with a counselor through their employee assistance program.

[10]It is undisputed that Rivas received full pay for the period of March 7 through March 31.

9

employment. *See Faragher*, 524 U.S. at 788. The Fifth Circuit Court of Appeals and other federal courts of appeals have also recognized that a single incident may be severe enough to alter the conditions of the victim's employment. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim."); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) (same); *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("[W]e have often recognized that even one act of harassment will suffice [to create a hostile work environment] if it is egregious."); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (single incident of physically threatening and humiliating conduct can be sufficient to create hostile work environment supporting sexual harassment claim); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability.").

The Fifth Circuit has also recognized, as have other federal courts of appeals, that there is an inverse relationship between the pervasiveness and severity factors. *See WC&M Enters., Inc.*, 496 F.3d at 400) (citing *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.") (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)); *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (stating that severity and pervasiveness are, "to a certain degree, inversely related; a sufficiently severe episode may occur

as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.") (citation omitted)).

In this case, the evidence showed that, for a period of months, Rivas was subjected to one of the most intimate parts of her body being surreptitiously photographed at the hands of one of her supervisors. While she was not physically assaulted,[11] the evidence could support a conclusion that this invasion of her reasonable expectation of privacy was humiliating and, because Griffin had access to the location of her residence, potentially physically threatening. Rivas produced evidence that this incident negatively affected both her personal life and her ability to perform her job duties. We find that this is more than a scintilla of evidence that raised a genuine issue of material fact that both a reasonable person would find, and Rivas personally perceived, her work environment to be hostile or abusive as a result of Griffin's conduct.

To be sure, as Estech points out in its brief, Estech acted promptly to mitigate the effects of the incident on Rivas by immediately terminating Griffin, by helping Rivas to find a counselor, by rearranging its offices, and by providing her with a very flexible work schedule. While this is some evidence that a reasonable person would not find the work environment to be hostile or abusive, we cannot say that it establishes that conclusion as a matter of law. Consequently, we find that Rivas produced more than a scintilla of probative evidence raising a genuine issue of material fact that both a reasonable person would find, and Rivas personally perceived, her work environment to be hostile or abusive as a result of Griffin's conduct, *see Faragher*, 524 U.S. at 787; *Vonocom, Inc.*, 2020 WL 1528496, at \*3, and that reasonable and

---

[11]Similar conduct in photographing a person's private areas without consent can be established as a felony in Texas. *See* TEX. PENAL CODE ANN. § 21.15.

11

fair-minded jurors could differ in their conclusions regarding this issue, *see Vonocom, Inc.*, 2020 WL 1528496, at \*3.

Nevertheless, Estech argues that, since Rivas was not aware that she was being photographed until after the camera was discovered, such photography could not contribute to her subjective view of a hostile work environment, citing *Thatcher v. Perkins*, No. 1:10-cv-01115-TWP-TAB, 2013 WL 3287674 (S.D. Ind. June 28, 2013) and *Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494 (M.D. Fl. 1995). However, in *Thatcher*, two of the plaintiffs did not learn of a hidden camera in a changing room until after their employment had been terminated, and the court found that, although it may have been objectively offensive, those plaintiffs could not show that they subjectively perceived their work environment as offensive. *Thatcher*, 2013 WL 3287674, at \*7–8. A third plaintiff learned of the camera a month after it had been removed, and four days before her employment had been terminated, but she did not produce any evidence that knowledge of the camera subjectively altered her work environment. *Id.* at \*8. In this case, however, Rivas discovered the hidden camera and its contents while she was still employed and produced some evidence that it both objectively and subjectively altered the conditions of her employment.

In *Liberti*, the court acknowledged that courts have held that "incidents not known to an individual until after, for example, the individual's date of termination, could not have contributed to the individual's subjective view of a hostile environment." *Liberti*, 912 F. Supp. at 1504–05 (citations omitted). However, the court held that those cases were not apposite in that case since the plaintiffs became aware of holes in the wall of their dressing room during

12

their employment, and later learned that they had been used by a male employee for peeping and recording them in various stages of undress. *Id.* at 1499, 1505. The court reasoned that the plaintiffs' after-the-fact knowledge of the male employee's behavior could be a factor that supported their perception of a hostile work environment. *Id.* at 1505.

Estech also argues that it was entitled to summary judgment because it established the affirmative defense provided for in *Faragher* and *Ellerth*. In *Faragher* and *Ellerth*, the United States Supreme Court held that, although an employer is vicariously liable for the harassing conduct of its supervisor-employee, when no tangible employment action is taken against the victim, the employer may raise an affirmative defense to liability or damages. *Ellerth*, 524 U.S. at 764; *Faragher*, 524 U.S. at 807. The affirmative defense requires that the employer show "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

However, the *Ellerth/Faragher* affirmative defense cannot support the trial court's summary judgment in this case since it was not a ground on which summary judgment was sought in the trial court regarding the camera incident. *See Merriman*, 407 S.W.3d at 248. In its summary judgment motion, Estech did not assert this defense as a ground for summary judgment. In addition, in its reply in support of its motion for summary judgment, Estech affirmatively informed the trial court that "[Estech] does not raise the *Ellerth/Faragher* defense in connection with the discovery of the camera that Griffin placed because Plaintiff reported the

camera immediately after discovering it, and Estech promptly addressed the issue." Rather, Estech advised the trial court that it would only assert the defense in regard to the other, unreported, incidents raised by Rivas if the court decided to analyze those incidents. Since we have not considered those unreported incidents in our analysis of whether there was more than a scintilla of probative evidence that the camera incident affected a condition of Rivas's employment, and Estech did not assert the *Ellerth/Faragher* defense in connection with the camera incident, that defense cannot support summary judgment on that issue.

Finally, Estech argues that Judge Jones's opinion in *Indest v. Freeman Decorating, Inc.*, supports the trial court's summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999). In that case, Arnaudet, a Freeman vice-president, made crude sexual comments and sexual gestures to Indest, a Freeman exhibitor services representative, four times over a three-day period. *Id.* at 260. Indest promptly reported the incidents to her director and branch manager, and Freeman investigated the complaint, which resulted in a verbal and written reprimand of Arnaudet and Arnaudet's suspension without pay for seven days. *Id.* at 260–61.

After discussing *Ellerth* and *Faragher* and their applicability to cases in which the alleged harasser was a supervisor-employee, Judge Jones concluded that this Supreme Court precedent was not controlling in a case in which the victim promptly reported the harassment and the employer took prompt remedial action. *Id.* at 265. Judge Jones went on to hold that, because Indest promptly complained of the harassing conduct, and Freeman promptly took appropriate remedial action, Freeman's prompt response relieved it of Title VII vicarious liability. *Id.* at 267.

14

As previously noted, in the trial court, Estech asserted its remedial response in relation only to the fifth element of a hostile work environment claim required cases in which a non-supervisory employee is the alleged harasser. Estech never asserted its prompt remedial response in the trial court as an affirmative defense as contemplated by Judge Jones's opinion. Consequently, this unasserted ground cannot support the trial court's summary judgment. *See Merriman*, 407 S.W.3d at 248.

Even if we were to construe Estech's summary judgment pleadings so broadly as to include this ground, Judge Jones's opinion in *Indest* will not support the trial court's summary judgment. First, Judge Jones's opinion has little precedential value on this issue since she was the only judge on the panel that held that the *Ellerth/Faragher* precedent was not controlling in that case. Judge Wiener wrote a concurring opinion highly critical of Judge Jones's opinion that *Ellerth/Faragher* was not controlling precedent and noted that these Supreme Court cases "set forth a comprehensive framework for determining when an employer can be held vicariously liable for sexual harassment by a supervisor." *Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 796 (5th Cir. 1999) (Weiner, J., concurring).[12] The third judge on the panel concurred in the result but did not concur in either opinion. *Id.* n.1 (noting that, because Judge Ferguson did not concur with either Judge Jones's or Judge Weiner's opinion, "neither enjoys a quorum and thus neither writing constitutes precedent in [the Fifth] Circuit").

In addition, Judge Jones sought to carve out an exception to employer vicarious liability not contemplated by the *Ellerth* and *Faragher* opinions—an exception that eviscerates those

---

[12]Judge Weiner would have affirmed the summary judgment in favor of Freeman on the ground that Arnaudet's conduct was neither pervasive nor severe. *Id.*

opinions in cases in which an employer takes prompt remedial actions. In *Ellerth* and *Faragher* the Supreme Court made clear that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. However, in those cases in which no tangible employment action against the employee occurred, the Supreme Court sought to further Title VII's goal to encourage employers to take reasonable steps to avoid harm, e.g., by implementing an anti-discrimination policy that provided a reporting procedure to remedy the conduct and sought to give credit to employers who did so. *Faragher*, 524 U.S. at 806. In addition, the Court recognized that, when an employer had taken reasonable steps to avoid discriminatory conduct, the employee would have a coordinate duty to avoid or mitigate harm by availing herself of the employer's preventive or remedial apparatus. *Id.* at 806–07.

To accommodate both the principle of vicarious liability for harm caused by a supervisor-employee and Title VII's "policies of encouraging forethought by employers and saving action by employees," the Supreme Court provides for an affirmative defense in those supervisor-employee harassment cases in which no tangible employment action has been taken against the employee-victim. *Id.* at 807. In such cases, the employer can avoid liability for damages by proving that (1) it exercised reasonable care to prevent *and* correct promptly any sexually harassing behavior *and* (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

16

However, under Judge Jones' formulation, if the employer is unable to show the second element of the affirmative defense because the employee actually took advantage of the preventive/corrective opportunities by promptly reporting the harassment, then the employer need only show that it promptly corrected the harassing behavior, even if the employer did nothing to prevent the harassing behavior. This, of course, would defeat one of the primary goals of the *Ellerth/Faragher* affirmative defense, which is to give credit to the employer who not only promptly remediates the discriminatory conduct, but who also takes reasonable steps to prevent the discriminatory conduct from happening in the first place.

Finally, even though an employer who promptly takes measures to remediate the harassing conduct of its supervisor-employee may not be able to establish the *Ellerth/Faragher* affirmative defense because the victim promptly reported the conduct, the employer may still be credited for its prompt remedial actions. As noted above, the employer's prompt and appropriate mitigation efforts are relevant to the jury's consideration of whether a reasonable person would find the work environment to be abusive or hostile. They are also relevant to the jury's consideration of damages if it finds the employer liable. For these reasons, we decline Estech's invitation to apply Judge Jones's opinion to this case.

Because (1) from the summary judgment evidence, reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence as to whether Griffin's harassing conduct affected a term or condition of her employment and (2) no other grounds on which summary judgment was sought support the trial court's judgment, we find that the trial court erred in granting summary judgment for Estech on Rivas's sexual harassment

claim. We sustain Rivas's first issue.[13] Because Rivas did not challenge the trial court's summary judgment on her claims for retaliation by constructive discharge, intrusion on seclusion, and intentional infliction of emotional distress, we find no error in the trial court's summary judgment on those issues.

For the reasons stated, we affirm the trial court's summary judgment as to Rivas's claims for retaliation by constructive discharge, intrusion on seclusion, and intentional infliction of emotional distress; reverse the trial court's summary judgment related to her sexual harassment claim; and remand this case to the trial court for further proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice

Date Submitted:     January 28, 2021
Date Decided:       June 3, 2021

---

[13]Because our sustaining of Rivas's first issue is dispositive, we need not address her remaining issues.

18